[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15873
_____

D.C. Docket No. 3:13-cv-00018-TCB


BROOKS FIVEASH,
BOBBIE FIVEASH,

Plaintiffs-Appellants,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 25, 2015)

Before WILLIAM PRYOR and JORDAN, Circuit Judges, and HAIKALA,[*]
District Judge.

_____

[*] Honorable Madeline Hughes Haiklala, United States District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

Brooks and Bobbie Fiveash appeal the district court's order granting judgment as a matter of law in favor of Allstate on their breach of contract claim. With the benefit of oral argument, and for the reasons that follow, we reverse and remand.

## I

In May of 2009, the Fiveash home in Tallapoosa, Georgia, sustained fire damage. The Fiveashes filed an insurance claim under their policy with Allstate. Fire investigators concluded that the fire had been set intentionally, as the doors to the home were locked at the time of the fire and there was no sign of forced entry. Allstate conducted its own investigation, during which its investigators interviewed Brooks and Bobbie Fiveash. Both stated during their examinations under oath that only they and their son had keys to the house. Allstate later learned that the Fiveashes' daughter, Brooks Ann, also had a key, and Brooks Ann's husband had been seen near the home shortly before the fire. Thus, Allstate determined that the Fiveashes had made a material misrepresentation when they failed to inform the investigators that their daughter had a key to the home and denied the Fiveashes' claim under the policy fraud provision: "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."

2

The Fiveashes filed a complaint against Allstate alleging breach of contract and bad faith in connection with the denial of payment under the policy. At trial, both Brooks and Bobbie testified that Brooks Ann had a key to the house and that they had failed to tell Allstate investigators about the key. They both further admitted that they had not corrected this misstatement when they received the errata sheets from their examinations under oath. They explained that their intent was not to deceive Allstate, but rather that they had forgotten their daughter had a key.

After the district court denied Allstate's motion for judgment as a matter of law, the jury found in favor of the Fiveashes. The court then granted Allstate's renewed motion, finding that the testimony regarding the number of keys was material, and that the Fiveashes' intent to deceive Allstate could be inferred from the circumstances. The Fiveashes appeal the district court's order granting judgment as a matter of law to Allstate on their breach of contract claim.[1]

## II

We have diversity jurisdiction over this matter. *See* 28 U.S.C. § 1332. Because the claim arose in Georgia, we apply Georgia substantive law. *See* *McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001). Moreover, the parties do not dispute that Georgia substantive law governs.

---

[1] The district court granted Allstate's motion for judgment as a matter of law with respect to the bad faith claim. The Fiveashes do not appeal from this decision.

3

In a diversity case, we apply a federal standard in addressing the propriety of a judgment as a matter of law. *See Jones v. Miles Laboratories, Inc.*, 887 F.2d 1576, 1578 (11th Cir. 1989). "We review *de novo* a district court's grant of judgment as a matter of law, applying the same standard as the district court." *Collins v. Marriott Int'l., Inc.*, 749 F.3d 951, 956-57 (11th Cir. 2014) (internal quotation marks and citation omitted).

"A district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Id.* at 957 (internal quotation marks and citation omitted). When determining whether judgment as a matter of law is proper "the court should review all of the evidence in the record, but in doing so, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id. (citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110  (2000) (internal quotation marks and alteration omitted). *See also Davila v. Menendez*, 717 F.3d 1179, 1184 (11th Cir. 2013) (explaining that the court, when deciding whether to issue a judgment as a matter of law, "must refrain from deciding the credibility of witnesses or weighing the evidence") (internal quotation marks, citation, and alterations omitted).  In other words, judgment as a matter of law "can be [entered] only when the evidence favoring the [movant] is so one-

sided as to be of overwhelming effect." *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1250 (11th Cir. 1997).

## III

Under a concealment or fraud provision in an insurance contract, coverage is void if there has been a willful and intentional misrepresentation of material facts made for the purpose of defrauding the insurer. *See Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1443 (11th Cir. 1984) (applying Georgia law). Significantly, the Georgia Supreme Court "has repeatedly held that the burden [is] upon the insurer to prove an affirmative defense, such as fraud on the part of the insured in obtaining the policy, or that a loss apparently covered by the policy came within an exclusionary clause contained in the policy." *Reserve Life Ins. Co. v. Ayers*, 121 S.E.2d 649, 654 (Ga. 1961). *See also State Farm Mut. Auto. Ins. Co. v. Wendler*, 172 S.E.2d 360, 363 (Ga. Ct. App. 1969) (concluding that the "burden was upon [the insurer] in asserting an affirmative defense[, in this case fraud,] to establish all the material elements thereof").

When considering questions of material misrepresentations in insurance contracts, "Georgia courts employ a reasonableness test, an objective standard of conduct against which to measure the effect of the insured's false declarations." *Woods v. Indep. Fire Ins. Co.*, 749 F.2d 1493, 1497 (11th Cir. 1985).

> It must appear that these false statements were made willfully and intentionally for the purpose of defrauding the insurer. Such a clause

5

in the policy would not cover misstatements or exaggerated claims of loss or perjury in connection therewith committed by the insured during the trial. Neither would the misstatement by the insured in his sworn statement to the company made shortly after the fire as to the value of some of the property destroyed be covered by such a condition unless it was shown that these misstatements were willfully and intentionally made for the purpose of defrauding the insurer.

*Am. Alliance Ins. Co. v. Pyle*, 8 S.E.2d 154, 160 (Ga. Ct. App. 1940). *See also Superior Fire Ins. Co. v. Peters*, 10 S.E.2d 94, 98 (Ga. Ct. App. 1940) (affirming the denial of a motion for a new trial where "[t]he evidence show[ed] that the plaintiff did not intentionally falsely swear in the proof furnished so as to work a forfeiture of the policy"). An intent to defraud can be inferred when the misrepresentation is made willfully and intentionally. *See generally Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 95, 3 S.Ct. 507, 515 (1884).

Here, the parties do not dispute that the number of keys and who had access to them was material to Allstate's investigation of the fire. In fact, both Brooks and Bobbie testified that they misstated the number of keys in their earlier examinations under oath. And Bobbie acknowledged at trial that such information was material. Thus, the only question is whether the Fiveashes' failure to inform Allstate that their daughter had a key was willful and intentional, and meant to defraud Allstate.

Generally, the question of whether the insured acted with intent to deceive is a question for the jury. *See Ga. Farm Bureau Mut. Ins. Co. v. Richardson*, 457

6

S.E.2d 181, 184 (Ga. Ct. App. 1995) (explaining that if there is any evidence to support a jury's finding of intent, the court should not grant judgment as a matter of law). "There must be a willful intent to defraud rather than an innocent mistake." *Watertown Fire Ins. Co. v. Grehan*, 74 Ga. 642, 656-57 (1885). *See also Am. Ins. Co. v. Jass*, 22 F.2d 793, 794 (5th Cir. 1927) (concluding that it was for the jury to decide whether the insured was simply mistaken or made the false statement willfully); *Camden Fire Ins. Ass'n v. Penick*, 2 F.2d 964, 965 (5th Cir. 1924) (explaining that it is for the jury to decide whether the insured's misstatement was an innocent error).

In this case, both Bobbie and Brooks Fiveash told Allstate investigators, fire department investigators, and their own investigator that only they and their son had keys to the house. At no time did either of them correct this information.[2] At trial, Bobbie testified that while she "did the best [she] could" answering questions during the examination, she admittedly "end[ed] up guessing a lot." Brooks testified that he was not trying to mislead Allstate when he failed to mention his daughter had a key. The jury also heard deposition testimony of the Fiveashes' son that he was unaware that his sister had a key to the house. Brooks further testified

---

[2]  In a subsequent deposition, the Fiveashes' daughter, Brooks Ann, stated she had a key for at least three years leading up to the fire. But this deposition was not introduced at trial, and Brooks Ann did not testify as a witness.

that he had added rooms on to the home to create space for family members over the years and that he and Bobbie had lost many sentimental items in the fire.

Allstate presented testimony to show that the Fiveashes had tried to sell the house some years before the fire, after Bobbie's mother died, but had not been able to do so. After their retirement, the Fiveashes wanted to travel more and were not at the house for extended periods. Brooks had also made a previous insurance claim for a lost ring. But after the ring was recovered, he never returned the money to Allstate. And the Fiveashes' good furniture had been moved out of the house prior to the fire and replaced with inexpensive furniture at the time of the blaze. Finally, Brooks testified that he handled all the finances and Bobbie never wrote checks, but there was evidence in the record of checks Bobbie had signed.

In finding for the Fiveashes, the jury rejected Allstate's argument that Brooks and Bobbie acted willfully and with the intent to defraud. The question we must ask is whether the evidence at trial was so one-sided that it required a finding that the Fiveashes made the misrepresentations willfully and with the intent to deceive.

We cannot say that it was. Rather, we conclude that where, as here, there are "obvious conflict[s] in the evidence," a judgment as a matter of law is improper. *See Allstate Ins. Co. v. Baugh*, 327 S.E.2d 576, 578 (Ga. Ct. App. 1985)

8

(explaining that where there is conflicting evidence as to insured's misstatement to insurance company, the court should deny a motion for a directed verdict).

Allstate relies on *Meyers v. State Farm Fire and Casualty Company*, 801 F. Supp. 709 (N.D. Ga. 1992), as support for the district court's order. The district court in *Meyers* found that the insureds' claims of innocent mistake were "disingenuous at best" because the insureds had been uncooperative in the investigation by failing to turn over financial records at State Farm's request. *Id.* at 715-16. Allstate argues that the Fiveashes were similarly uncooperative. We disagree. The only thing the Fiveashes allegedly failed to submit were their cell phone records. Allstate has not shown, much less argued, that these records were relevant to its investigation, and the testimony at trial established that the Fiveashes eventually submitted their cell phone records.[3]

We simply cannot, as the district court did, necessarily infer the Fiveashes' intent to defraud the insurance company. The jury had the opportunity to assess the credibility of the witnesses, and, having done so, believed the Fiveashes' explanation that the misrepresentation was an innocent mistake. The jury further heard evidence of motive and possible suspects, including Brooks Ann's husband, but chose to credit the Fiveashes' version of events. Given the conflict in the

---

[3]    The Fiveashes gave Allstate their cell phone numbers and an authorization to obtain the records directly from the cell phone company. Allstate was unable to obtain the records, and the Fiveashes eventually obtained the records for them as requested.

evidence and these credibility determinations, we cannot say that the only rational conclusion was that Allstate met its burden in proving by a preponderance of the evidence that the Fiveashes made their misrepresentation willfully and with intent to defraud. Therefore, the district court erred by granting Allstate's renewed motion for judgment as a matter of law.

## IV

We thus reverse the district court's order and remand with instructions to reinstate the jury's verdict for the Fiveashes.

**REVERSED and REMANDED.**